IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| JANET BOWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:13-CV-1292-STA-dkv |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of | ) | |
| Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Janet Bowman filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("the Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and again upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on May 10, 2012. On July 6, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[1] The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision, and whether the correct legal standards were applied.[2]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] It is "more than a mere scintilla of evidence, but less than preponderance."[4] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide a case accordingly.[5] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[6]

Plaintiff was born on March 4, 1962.[7] She has a high school education and past relevant work experience as a floral delivery person.[8] Plaintiff alleges disability due to major depressive

---

[1] 42 U.S.C. § 405(g)

[2] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

[3] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[4] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[5] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[6] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

[7] (R. 131, ECF No. 8-8).

disorder ("MDD"), post-traumatic stress disorder ("PTSD"), and anxiety disorder; her alleged onset date of disability is April 3, 2006.[9]

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements of the Social Security Act through September 30, 2010; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: MDD, PTSD, and anxiety disorder, but she does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404 subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels as defined in 20 C.F.R. 404.1567(a), subject to the following non-exertional limitations: she can understand, remember and carry out 1–3 step directions, can maintain concentration and persistence for 1–3 step tasks, can have infrequent contact with the general public, supervisors and coworkers, and is better working with things, rather than people, and can adapt to infrequent work place changes; (5) Plaintiff is capable of performing her past relevant work, and (6) Plaintiff has not been under a disability, as defined in the Social Security Act, from April 3, 2006, through the date of the ALJ's decision.[10]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[11] The claimant bears the ultimate burden of establishing entitlement to benefits.[12] The

---

[8]  (R. 154, ECF No. 8-8.)

[9]  (R. 245–337, 418–19, 450–52, ECF Nos. 8-10, 8-16, 8-19.)

[10]  (R. 15 – 23, ECF No. 8-3.)

[11]  42 U.S.C. § 423(d)(1).

[12]  *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[13]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[14]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[15] Here, the sequential analysis proceeded to the fourth step. The ALJ found that Plaintiff could perform her past relevant work as a florist delivery person

---

[13] *Id.*

[14] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[15] 20 C.F.R. § 404.1520(a).

4

and, therefore, was not disabled within the meaning of the Act. The ALJ also found that there were other jobs that existed in the national economy that Plaintiff could perform.[16]

Plaintiff agrees with the finding that she is not disabled by any physical impairments but argues that she is disabled by her psychological impairments.[17] Plaintiff complains of the weight given to the medical opinions in the record, specifically the opinions of her treating therapist, Dana Williams, M.S., physical consultative examiner Edwin Croswaith, M.D., and psychological consultative examiner Richard Spring, Ph.D.; the assessment of her credibility by the ALJ; and the ALJ's finding that her impairments did not meet the requirements of a listing. Plaintiff's arguments are not persuasive.

At step four of the sequential analysis, the ALJ compares the claimant's residual functional capacity with the requirements of the claimant's past work.[18] Past relevant work is, generally, a job that was performed within the last fifteen years, performed long enough to learn how to perform the job, and was substantial gainful activity.[19] If the past job did not require the

---

[16] Plaintiff contends that the ALJ's alternate finding was reversible error. (Pl's Brief p. 3, ECF No. 12.) However, she does not cite any authority in support of her argument, nor has she shown how she was prejudiced by this alternate finding. *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654-55 (6th Cir. 2009) (citing *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983) (stating that the Court will not remand unless "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses"); *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969) (noting that courts are not required to "convert judicial review of agency action into a ping-pong game" when "remand would be an idle and useless formality"), and *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970) (holding that an agency's failure to follow its own regulations did not require reversal absent a showing of substantial prejudice by the affected party)).

[17] (Pl's Brief p. 4, ECF No. 12.)

[18] 20 C.F.R. §§ 404.1520(e), 404.1560(b); *see also* Social Security Ruling 82-62, 1982 WL 31386, *3 (S.S.A.).

[19] 20 C.F.R. § 404.1565(a).

claimant to perform activities in excess of the claimant's residual functional capacity, the claimant will be found not disabled.[20] A claimant must prove that she is unable to return to her past relevant work either as she performed that work or as that work is generally performed in the national economy.[21] In the present case, Plaintiff has failed to carry her burden of proof at both step four and step five.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[22] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[23] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[24] Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[25]

---

[20] 20 C.F.R. §§ 404.1520(e), 404.1560(b), 404.1561.

[21] *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

[22] 20 C.F.R. §§ 404.1502, 404.1527(c)(1).

[23] *Id.* §§ 404.1502, 404.1527(c)(2).

[24] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180 at *2 (Soc. Sec. Admin. July 2, 1996).

[25] 20 C.F.R. § 404.1527(c).

The ALJ gave little weight to the opinions of Dr. Crosthwait and Dr. Spring, neither of whom was a treating source. Dr. Crosthwait diagnosed Plaintiff with depression and paranoia.[26] However, he did not explain how Plaintiff's mental impairments limited her ability to perform work-related activities.[27] Additionally, Dr. Crosthwait did not identify any medical or clinical findings as support for his other functional limitations.[28] The ALJ properly rejected Dr. Crosthwait's findings because they were inconsistent with his own treatment notes and other record evidence. Furthermore, as Dr. Crosthwait is not a psychiatrist or mental health therapist, diagnoses of depression and paranoia are outside his medical specialty.

The ALJ accorded some weight to Dr. Spring's findings but rejected his finding that Plaintiff had a GAF score of fifty because it was inconsistent with the Plaintiff's longitudinal treatment record. Dr. Spring found that Plaintiff had only a mild impairment of work tolerance, which suggests that Plaintiff was not disabled.[29] According to Dr. Spring, Plaintiff had the ability to understand, remember, and carry out instructions, was able to accept instructions and criticism, maintain socially appropriate behavior, maintain basic standards of neatness and cleanliness, respond adaptively to change, function with reasonable independence in terms of work-related decisions, and travel independently, but would have some difficulty with complex and varied instructions due to memory problems; Plaintiff's ability to work with others was intact but she would have difficulty being around others due to anxiety and an avoidant pattern;

---

[26] (R. 340, ECF No. 8-12.) As noted above, Plaintiff does not allege that she is disabled by her physical impairments. Therefore, the Court has discussed only Dr. Crosthwait's findings concerning her alleged mental impairments.

[27] (*Id.* at 339-46.)

[28] (*Id.*)

[29] (*Id.* at 351.)

and Plaintiff had a moderate impairment in terms of being around other people due to anxiety and problems with public transportation due to the presence of others.[30] The ALJ's residual capacity finding is consistent with Dr. Spring's opinion.

Next, Plaintiff argues that the ALJ failed to give appropriate weight to the opinion of Ms. Williams, her therapist, and failed to weigh Ms. Williams' opinion pursuant to SSR 06-3p. Ms. Williams submitted a Medical Assessment of Ability to Do Work-Related Activities (Mental) in which she opined that Plaintiff had a poor/none ability (no useful ability to function in this area) in all categories of mental functional capacity, except that she found Plaintiff has a fair ability to understand, remember, and carry out simple job instructions.[31]

Contrary to Plaintiff's argument, SSR 06-3p does not mandate that an ALJ provide an explanation of the weight given to opinions from sources who are non-physicians such as Ms. Williams.[32] Furthermore, SSR 06-30 requires that an ALJ explain his reasons only "when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source." In this case, the ALJ did not determine that Ms.

---

[30] (*Id.*)

[31] (R. 450-452. ECF No. 8-19.)

[32] SSR 06-3p provides that:
Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given the opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

Williams, who is a non-medical source, was entitled to greater weight than a medical treating source. As such, the ALJ was not required to explain his reasons for rejecting Ms. Williams' findings.

However, the ALJ did, in fact, explain why Ms. Williams' opinion was given little weight, i.e., because her findings were inconsistent with Plaintiff's longitudinal treatment history and the evidence of record as a whole, including other mental health treatment records from Pathways Inc. Pathways personnel completed mental functional assessments for 2006-2010. With the exception of 2006, the mental health therapists at Pathways determined that Plaintiff had moderate limitations in her activities of daily living, interpersonal functioning, adaptation to change, and concentration, persistence, and pace.[33] Plaintiff received only a marked limitation in activities of daily living, interpersonal functioning, and adaptation to change in 2006, but, in subsequent years, Plaintiff's symptoms improved to the point of having only a moderate limitation in these areas.[34]

Ms. Williams' findings are also inconsistent with the symptomology reported by other mental health therapists during Plaintiff's mental status examinations. Despite Plaintiff's depression and anxiety, most of the other mental health therapists reported that Plaintiff had appropriate thought process, sociability, orientation, memory, motor activity, judgment, insight, and speech. Moreover, they reported that Plaintiff was able to maintain activities of daily living with medication and was able to do most tasks to completion, which contradicts Ms. Williams' findings. Finally, Ms. Williams opined that Plaintiff had poor or no ability to maintain personal

---

[33] (R. 249-50, 252-53, 255-56, 258-59. ECF 8-10.)

[34] (*Id.*)

appearance,[35] but other mental health therapists reported that Plaintiff's appearance was neat and that she had good hygiene. There was one occasion when Plaintiff had a disheveled appearance, but on the next visit she had appropriate hygiene.[36] One incident of a disheveled appearance does not support a finding that Plaintiff had poor or no ability to maintain personal appearance.

Also lending support to the ALJ's weighing of Ms. Williams' opinion is Dr. Spring's evaluation of Plaintiff's mental condition which did not show that Plaintiff was as limited as opined by Ms. Williams. Dr. Spring diagnosed Plaintiff with a depressive disorder and an anxiety disorder.[37] As explained above, Dr. Spring said that Plaintiff had the ability to understand, remember, and carry out instructions, but would have some difficulty with complex and varied instructions due to memory problems; Plaintiff's ability to work with others was intact but she would have difficulty being around others due to anxiety and an avoidant pattern; and she was able to accept instructions and criticism, maintain socially appropriate behavior, maintain basic standards of neatness and cleanliness, respond adaptively to change, function with reasonable independence in terms of work-related decisions, and travel independently.[38] Dr. Spring concluded that Plaintiff's impairment of work tolerance was mild.[39] Dr. Spring's findings contradict Ms. Williams' restrictive findings.

---

[35] (R. 452, ECF No. 8-19.)

[36] (R. 436, 442, ECF No. 8-17, 8-18.)

[37] (R. 351, ECF No. 8-12.)

[38] (*Id.*)

[39] (*Id.*)

10

Plaintiff complains that there is not one treating, examining, or reviewing source opinion that is consistent with the residual functional capacity finding. Plaintiff's argument is without merit because the assessment of a claimant's residual functional capacity is "based on all the relevant evidence in [the claimant's] case record," and not merely on a doctor's opinion.[40] Here, the finding is consistent with the findings of the state agency psychologists, state agency physicians, and the psychological consultative examiner.

Amin Azimi, Ed.D., a consultative psychologist, completed a mental residual functional capacity assessment and opined that Plaintiff could perform one - three step tasks, could concentrate and persist for an eight-hour day, interact infrequently with the public, supervisor, and co-workers, and adapt to infrequent changes, and set independent goals.[41] State agency psychologist, Jeanaan Kahaleeli, affirmed the opinion of Dr. Azimi.[42] Dr. Spring opined that Plaintiff's impairment of work tolerance was mild.[43] Plaintiff's ability to work with others was intact but she would have difficulty being around others due to anxiety and taking public transportation.[44] These opinions support the ALJ's finding with respect to Plaintiff's mental limitations.

---

[40] 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). *See also* 20 C.F.R. § 404.1527(e) (noting that opinions on issues such as a claimant's RFC "are not medical opinions , . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."); SSR 96-5p ("Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing.")

[41] (R. 369, ECF No. 8-12.)

[42] (R. 396, ECF No. 8-14.)

[43] (R. 351, ECF No. 8-12.)

[44] (*Id.*)

Plaintiff argues that the ALJ credibility finding was "boilerplate" and failed to comply with the agency's regulations and ruling for evaluating credibility. To the contrary, the ALJ sufficiently explained his credibility finding consistent with SSR 96-7p by discussing what the medical evidence and other evidence indicated as to the intensity, persistence, and limiting effects of Plaintiff's symptoms in contrast to her allegations of disabling symptoms.[45]

A claimant's credibility comes into question when her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence."[46] To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[47] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."[48] However, the ALJ's credibility finding "must find support in the record."[49]

Here, Plaintiff failed to provide objective medical evidence confirming the severity of her alleged symptoms, and the record as a whole does not indicate that her mental condition was of disabling severity. Plaintiff reported that she had no problems with car races, building cars,

---

[45] *See Potter v. Colvin*, 2013 WL 4857731, at *14-15 (E.D. Tenn. Sept. 11, 2013) (rejecting the plaintiff's argument that the ALJ erred in employing a "boilerplate" credibility finding).

[46] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[47] *Id.*

[48] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[49] *Id.*

water sports, and outdoor activities.[50] Plaintiff's activities are not reflective of her alleged disabling limitations.[51]

The opinions of the Dr. Spring and the state agency mental and psychological consultants, as discussed above, also undermine Plaintiff's allegations of disabling limitations. Ms. Williams' opinion is supportive of her allegations, but as discussed above, the ALJ properly discounted Ms. Williams' opinion. The ALJ properly considered the relevant evidence and resolved any conflicts in the evidence, and Plaintiff has failed to meet her burden of proving that her condition caused disabling limitations.[52]

Next, Plaintiff asserts that the ALJ should have found that she has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the listing of impairments at step three of the sequential process. Plaintiff must meet all of a listing's specified medical criteria to be considered disabled under its terms.[53] The burden is on Plaintiff to show that she meets or equals the criteria for a listed impairment.[54] Plaintiff has not met that burden.

---

[50] (R. 271, ECF No. 8-10.)

[51] Although not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as she alleged. *See* 20 C.F.R. § 416.929(c)(3)(i); SSR 96-7p; Walters, 127 F.3d at 532; *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

[52] *See* 42 U.S.C. §§ 423(d)(5)(A), 1382(a)(3)(H)(i); 20 C.F.R. §§ 416.912(a), (c), 416.929(a).

[53] *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also* 20 C.F.R. § 416.925(c)(3) ("We will find that your impairment(s) meets ... a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction.").

[54] *See* 20 C.F.R. §416.912(a); *see also Foster*, 279 F.3d at 354 ("a claimant has the burden of demonstrating that her impairment meets or equals a listed impairment").

Plaintiff argues that the ALJ failed to consider whether she met medical listings 12.03, 12.04, and 12.06.[55] According to Plaintiff, she meets the criteria of section B and C of listings 12.03, 12.04, and 12.06.

To meet listing 12.03, Schizophrenic, paranoid and other psychotic disorders,[56] Plaintiff must meet the requirements in both A and B, or the requirements of paragraph C. Plaintiff does

---

[55] The listings are found in the Commissioner's Regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.

[56] 12.03 Schizophrenic, paranoid and other psychotic disorders: Characterized by the onset of psychotic features with deterioration from a previous level of functioning. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied:
A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
1. Delusions or hallucinations; or
2. Catatonic or other grossly disorganized behavior; or
3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
a. Blunt affect; or
b. Flat affect; or
c. Inappropriate affect;
OR
4. Emotional withdrawal and/or isolation;
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration;
OR
C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

not meet listing 12.03A because there is no evidence showing documented delusions, hallucinations, disorganized behavior, loosening of associations, illogical thinking, incoherence, or emotional withdrawal or isolation. Similarly, there is no evidence of record showing a documented history of chronic schizophrenic, paranoia, or psychotic disorder lasting at least two years. Instead, the medical evidence shows diagnoses of major depression disorder without psychotic features (DSM-IV code 296.33) and post-traumatic stress disorder.[57]

Although Dr. Crosthwait diagnosed Plaintiff with depression and paranoia, he was not a psychiatrist or mental health worker. Also, he did not conduct any psychological clinical or diagnostic tests to ascertain the extent of Plaintiff's depression and paranoia. Therefore, his diagnoses of depression and paranoia are not entitled to great weight.

To meet listing 12.04,[58] Plaintiff would need to meet the requirements in both A and B, or the requirements in paragraph C. There is no medical evidence of record showing manic

---

[57] (R. 245-337, 418-49, ECF Nos. 8-10, 8-16.)

[58] 12.04 Affective disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
A. Medically documented persistence, either continuous or intermittent, of one of the following:
1. Depressive syndrome characterized by at least four of the following:
a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking; or
2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or

syndrome or a depressive syndrome characterized by a minimum of four of the above symptoms. In addition, Plaintiff cannot show that she meets the requirements of paragraph C because there is no evidence of a history of chronic affective disorder lasting at least two years in duration.

To meet listing 12.06,[59] Plaintiff would need to meet the requirements in both A and B, or the requirements in paragraph C. There is no medical evidence of record showing that

---

c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;
OR
C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

[59] 12.06 Anxiety-related disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
A. Medically documented findings of at least one of the following:

Plaintiff had documented symptoms described in paragraph A, such as recurrent severe panic attacks, recurrent obsessions or compulsions, or persistent irrational fear. Plaintiff cannot show that she meets the requirements of paragraph C because there is no evidence that she was completely unable to function independently outside of her home. Accordingly, Plaintiff's argument fails.

In response to hypothetical questions that included the ALJ's assessment of Plaintiff's residual functional capacity, the vocational expert testified that Plaintiff could perform her past relevant work as a florist delivery person.[60] The vocational expert also identified examples of jobs that an individual with Plaintiff's limitations could perform.[61] Plaintiff failed to prove that

---

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
a. Motor tension; or
b. Autonomic hyperactivity; or
c. Apprehensive expectation; or
d. Vigilance and scanning; or
2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.
OR
C. Resulting in complete inability to function independently outside the area of one's home.

[60] (R. 46-49, ECF No. 8-3.)

[61] (*Id.* at 46-50.)

she had limitations other than those in the residual functional capacity and hypothetical questions. Thus, the ALJ properly relied on the vocational expert's testimony to find that Plaintiff could perform other work.[62]

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:   August 15, 2016.

---

[62] *See Foster*, 279 F.3d at 356-57 (finding that substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question). As noted above, the ALJ found both that Plaintiff could perform her past relevant work and that there was other work that exists in substantial numbers in the national economy that Plaintiff can perform.